IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Action |
| v. | No. 11-cr-00036-1 |
| KEITH MARTIN THOMPSON, | Civil Action |
| Defendant | No. 15-cv-00699 |

FILED
SEP -1 2015
MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

**O R D E R**

NOW, this **27th** day of August, 2015, upon consideration

of the following documents:

(1) Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, which motion was filed by defendant Keith Martin Thompson pro se on February 6, 2015 (Document 434)("Section 2255 Motion");[1]

(2) Government's Response to Defendant's Motion Under 28 U.S.C. § 2255, and Motion to Enforce Appellate Waiver, which response and motion was filed under seal on June 23, 2015 (Document 454) ("Government's Motion to Enforce Appellate Waiver"); together with

  (A) a copy of the sealed Transcript of Change of Plea hearing Before the Honorable James Knoll Gardner[,] United States District Judge, held April 6, 2012 ("Change-of-Plea Hearing Transcript"); and

---

[1] Although the Section 2255 Motion was filed with the Clerk of Court on February 11, 2015, defendant certified, under penalty of perjury, that he placed the Section 2255 Motion in the prison mailing system on February 6, 2015. Thus, it is treated as having been filed February 6, 2015 pursuant to the prison mailbox rule. Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998); Rule 3(d) of the Rules Governing Section 2254 Habeas Cases in the United States District Courts.

(B) a copy of the Transcript of Sentencing Hearing Before the Honorable James Knoll Gardner[,] United States District Judge, held September 11-13, 2013 ("Sentencing Hearing Transcript");[2] and

(3) [Defendant]'s Reply to Government's Response to Motion to Vacate,[]Set Aside or Correct a Sentence (28 U.S.C. § 2255), which reply was filed under seal on August 18, 2015 (Document 458) ("Defendants' Reply to Request for Dismissal");

it appearing that, in his formal written Guilty Plea Agreement, defendant waived his right to file this collateral appeal;[3] it

---

[2] I will refer to those transcripts, respectively, as the Sentencing Hearing Day 1, 2, and 3 Trasncript.

[3] Specifically, paragraph 11 on page 12 of the Guilty Plea Agreement signed and dated April 6, 2012 waives, with limited exceptions, defendant's right to file a direct or collateral appeal in this action. (See Guilty Plea Agreement (Document 291) filed under seal April 6, 2012 (Document 291)). Paragraph 11 of the Guilty Plea Agreement states:

> 11. In exchange for the undertakings made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law.
>
> a. Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal of his sentence.
>
> b. If the government does not appeal, then notwithstanding the waiver provision set forth in this paragraph, the defendant may file a direct appeal but may raise only claims that:
>
> (1) the defendant's sentence on any count of conviction exceeds the statutory maximum for that count as set forth in paragraph 7 [of the Guilty Plea Agreement] above;
>
> (2) the sentencing judge erroneously departed upward pursuant to the Sentencing Guidelines; and/or

(Footnote 3 continued):

further appearing that defendant seeks to collaterally attach his sentence in his Section 2255 Motion;[4] it further appearing

---

(Continuation of footnote 3):

>    (3)    the sentencing judge, exercising the Court's discretion pursuant to United States v. Booker, 543 U.S. 220 (2005), imposed an unreasonable sentence above the final guideline range determined by the Court.
>
>    If the defendant does appeal pursuant to this paragraph, no issue may be presented by the defendant on appeal other than those described in this paragraph.

(Guilty Plea Agreement at page 12, ¶ 11.)

Defense counsel, Robert C. Patterson, Esquire, reviewed the Guilty Plea Agreement with defendant prior to defendant's signing the plea agreement on April 6, 2012. (See Change-of-Plea Hearing Transcript at pages 17-20, and 46.) Moreover, during the April 6, 2012 change-of-plea hearing, I conducted a colloquy with defendant concerning the appellate waiver and defendant's specific questions about his appeal rights. (Id. at pages 26, and 101-115.)

During the colloquy, I advised defendant expressly, "If your attorney provided you with ineffective assistance as your lawyer, you cannot file a post-sentence collateral petition alleging the ineffective assistance of your counsel because you have given up your right to file all collateral appeals in your Guilty Plea Agreement." (Id. at page 112.) I further advised him that, "[h]owever, [he did] not give up the right to assert any Constitutional claims that the relevant case law says cannot be given up." (Id.) Defendant stated that he understood those things. (Id.) Furthermore, defendant affirmed at the change-of-plea hearing that he had read the Guilty Plea Agreement, that he discussed the agreement with Attorney Patterson and had Attorney Patterson answer any questions defendant had about the agreement, and that defendant understood and agreed to everything in the Guilty Plea Agreement. (Id. at page 46.)

Based upon that colloquy, I found that the Guilty Plea Agreement, including the appellate waiver, was knowingly and voluntarily agreed to by defendant and that its enforcement would not cause a miscarriage of justice. (Id. at page 178.)

[4]    Defendant Keith Martin Thompson pro se raises five grounds for relief in his Section 2255 Motion. First, he contends that Attorney Patterson rendered ineffective assistance of counsel during the plea negotiations, plea hearing, and sentencing hearing in this case. Specifically, defendant alleges that Attorney Patterson failed to explain that, by signing the Guilty Plea Agreement, defendant was waiving his right to bring a collateral appeal for ineffective assistance of counsel. Defendant argues that he was prejudiced by his counsel's inadequate explanation of the waiver.

(Footnote 4 continued):

-3-

that the Government's Motion to Enforce Appellate Waiver seeks to enforce that waiver and dismiss defendant's Section 2255 Motion,

---

(Continuation of footnote 4):

        Second, defendant contends that Attorney Patterson rendered ineffective assistance by failing to file a direct appeal after defendant objected to several enhancements in his Presentence Investigation Report.

        Third, defendant contends that Attorney Patterson rendered ineffective assistance by failing to recuse himself when a purported conflict of interest arose during the sentencing hearing. Specifically, defendant alleges that Special Agent Nicholas Graham of the Federal Bureau of Investigation gave false or misleading testimony regarding defendant's two-level firearm enhancement. Defendant contends that he informed Attorney Patterson of his wish to subpoena him and Assistant United States Attorney Mark S. Miller as witnesses to challenge the firearm enhancement. Once Attorney Patterson was put on notice of this alleged conflict of interest, defendant argues, he should have recused himself.

        Fourth, defendant alleges prosecutorial misconduct on the part of Assistant United States Attorney Miller. Defendant contends that Attorney Miller threatened, through defense counsel, to argue in opposition to application of the two-level reduction in offense level for acceptance of responsibility if defendant challenged the offense-level enhancement for his leadership role in the conspiracy. Defendant argues that the government inappropriately pressured defendant into signing the plea agreement and prejudiced him with unwarranted sentence enhancements.

        Finally, defendant contends that his direct-appeal counsel, Assistant Federal Defender Julie A. McGrain, rendered ineffective assistance by erroneously advising defendant to voluntarily waive his right to directly appeal his sentence on the ground of prosecutorial misconduct.

        For relief, defendant requests that the court hold an evidentiary hearing on his five claims and, ultimately, remand his case for a new sentencing hearing "on [the §] 2D1.1([b])(1)" -- that is, the two-point firearm enhancement. Defendant also requests that the court assign him counsel. I do not assign defendant counsel here because the record provides the information necessary to determine the enforceability of the appellate waiver without a hearing and, for the reasons expressed in footnote 5, infra, I grant the government's request to enforce the appellate waiver and dismiss the Section 2255 Motion.

IT IS ORDERED that the Government's Motion to Enforce Appellate Waiver is granted.[5]

IT IS FUTHER ORDERED that the Section 2255 Motion is dismissed.

IT IS FURTHER ORDERED that, because defendant fails to demonstrate denial of a constitutional right, a certificate of appealability is denied.

IT IS FURTHER ORDERED that the Clerk of Court shall mark the above-captioned civil action closed for statistical purposes.

BY THE COURT:

/s/ James Knoll Gardner
James Knoll Gardner
United States District Judge

---

[5] In response to defendant's Section 2255 Motion, the government contends that motion should be dismissed pursuant to the appellate waiver contained in the Guilty Plea Agreement. Specifically, the government contends that the waiver should be enforced because the Guilty Plea Agreement and defendant's pleas of guilty to the charged offenses were knowing and voluntary. Furthermore, the government contends that the Section 2255 Motion does not present any claims of apparent merit such that enforcement of the waiver would constitute a miscarriage of justice. For the reasons expressed below, I agree.

As explained by the United States Court of Appeals for the Third Circuit, "[c]riminal defendants may waive both constitutional and statutory rights, provided they do so voluntarily and with knowledge of the nature and consequences of the waiver." United States v. Mabry, 536 F.3d 231, 236 (3d Cir. 2008).

Where, as here, a defendant has waived his right to collaterally challenge his federal criminal conviction or sentence as part of a plea agreement yet asserts a claim of ineffective assistance of counsel, "[t]he threshold issue . . . is whether the waiver of collateral challenge rights in [defendant]'s plea agreement was knowing and voluntary." Id. at 237. In determining whether defendant's plea agreement was knowing and voluntary, the

(Footnote 5 continued):

(Continuation of footnote 5):

court should examine the record evidence, including the language of the plea agreement and the colloquy between the defendant and the judge during the Rule 11 hearing. United States v. Gwinnett, 483 F.3d 200, 203-04 (3d Cir. 2007).

Despite defendant's retrospective contentions to the contrary, his Guilty Plea Agreement, and the appellate waiver therein, was knowingly and voluntarily entered into and I made that finding following, and based upon, my colloquy with defendant during the April 6, 2012 change-of-plea hearing. (Change-of-Plea Transcript at page 178.) Indeed, defendant inquired specifically about his appeal rights during the change-of-plea hearing. As discussed above, I informed him that by signing the plea agreement, defendant forfeited forever his right to collaterally attack his conviction, his sentence, or the ineffective assistance of his lawyer. (Id. at page 112.) Defendant responded that he understood he was forfeiting these rights. (Id.)

Where, as here, a defendant has knowingly and voluntarily waived his right to appeal or collaterally attack a conviction or sentence, the waiver will be enforced provided that such enforcement does not cause a "miscarriage of justice." Id. The Third Circuit considers the following factors as indicative of a miscarriage of justice: "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result . . . ." Mabry, 536 F.3d at 242-243 (citing United States v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001))(internal quotations omitted). For the following reasons, enforcement of the collateral appeal waiver in defendant's Guilty Plea Agreement will not cause a miscarriage of justice.

Defendant's first argument -- that he was prejudiced by his counsel's allegedly inadequate explanation of the waiver -- is unpersuasive. As explained above, defendant's post hoc assertion that he did not fully understand the appellate waiver contradicts the record evidence. Furthermore, even if defense counsel had in fact provided an inadequate explanation of the waiver to defendant, this error was subsequently corrected by my explanation of the appellate waiver to defendant during our colloquy.

Defendant's second claim -- that his counsel provided ineffective assistance by failing to file an appeal after defendant objected to enhancements in his Presentence Investigation Report -- also does not indicate a miscarriage of justice. As stated by the Third Circuit in Mabry, where a client has waived his appeal rights, counsel's duty to act in the best interest of the client outweighs filing an appeal "which could cost the client the benefit of the plea bargain against his or her best interest." 536 F.3d at 240. Furthermore, "there is no reason to presume prejudice amounting to a miscarriage of justice in such a situation where the attorney's filing of an appeal would constitute a violation of the plea agreement . . . ." Id. at 240-41. Because defendant's plea agreement barred him from filing a direct appeal except in limited circumstances not presented in this case, it was not improper for defense counsel to refrain from filing

(Footnote 5 continued):

(Continuation of footnote 5):

such an appeal despite defendant's wishes to the contrary. Moreover, defendant did in fact file a direct appeal and thus, even if Attorney Patterson provided ineffective assistance in not filing a direct appeal on defendant's behalf, defendant was not prejudiced by any such ineffectiveness.

Defendant's claims of a conflict of interest on the part of Attorney Patterson and of prosecutorial misconduct on the part of Assistant United States Attorney Miller both stem from defendant's allegation that Special Agent Graham's testimony during the sentencing hearing, which provided evidence in support of a two-level firearm enhancement to defendant's sentence, was false. However, Special Agent Graham's testimony that defendant himself carried a firearm during the course of the conspiracy, which I found to be credible, was not essential to my overruling defendant's objecttion to application of the firearm enhancement under U.S.S.G. § 2D1.1(b)(1).

As part of the ongoing conspiracy, defendant requested that his co-conspirators, John Holder and Christopher Jay London, accompany defendant's drivers, co-defendants Carin Seals and Marquisha Talish Myers, for protection when they drove to New York City and Philadelphia to acquire "re-ups" of cocaine. (Sentencing Hearing Day 2 Transcript at page 16.) Special Agent Graham testified that defendant admitted Holder and London carried firearms on such trips. (Sentencing Hearing Day 1 Transcript at page 58.) Defendant did not challenge the assertion that he was aware that Holder and London carried firearms. (Id. at pages 70-71.)

Moreover, I determined that the fact that defendant asked Holder and London to escort his drivers for protection made it reasonably foreseeable to Mr. Thompson that Mr. Holder and Mr. London would carry guns in furtherance of this goal. (Id. at page 17.) I also found foreseeable the use of firearms in furtherance of the conspiracy by Holder and London because of the fact that firearms are so often used in the drug trade for protection of drugs, money acquired from drug sales, and the dealers themselves. (Id. at 18.) Therefore, I found that the possession of guns by defendant's co-conspirators during and in furtherance of the conspiracy was attributable to defendant pursuant to U.S.S.G. § 1B1.3(a)(1)(B). (Id.)

Because defendant's firearm enhancement did not hinge on his own possession of a firearm, but rather on the foreseeable gun possession of his co-conspirators, the inclusion of Special Agent Graham's testimony as to defendant's gun possession did not prejudice defendant.

Furthermore, defendant's claim that the government engaged in prosecutorial misconduct by threatening to oppose the two-level offense-level reduction for acceptance of responsibility if he challenged his sentence enhancements misunderstands the government's position. During his change-of-plea hearing, defendant admitted to performing many acts that confirmed he was the leader of the drug conspiracy, and his co-conspirators identified him as the leader of the conspiracy. (See Change-of-Plea Hearing Transcript at page 144-173; Government's Response at page 16.) If he had challenged his sentence enhancement for leadership, defendant would have risked contradicting his sworn testimony given at the change-of-plea hearing testimony.

(Footnote 5 continued):

(Continuation of footnote 5):

       Finally, defendant's contention that appellate counsel rendered ineffective assistance of counsel by mistakenly advising defendant to voluntarily waive his right to directly appeal his sentence on the ground of prosecutorial misconduct is also without merit. As discussed above, pursuant to his Guilty Plea Agreement defendant waived his right to file a direct appeal unless the government appealed, defendant's sentence exceeded the statutory maximum sentence for the offense, or the sentencing judge mistakenly departed upward or imposed an unreasonable sentence from the defendant's Sentencing Guideline range. (Guilty Plea Agreement at page 12, ¶ 11.) Alleged prosecutorial misconduct is not one of the exceptions under which defendant was permitted to file a direct appeal. (Id.) Thus, it was not improper for appellate counsel to advise defendant to voluntarily dismiss his direct appeal so as to avoid violating his plea agreement. Mabry, 536 F.3d at 240.

       To the extent defendant seeks support for his position from the United States v. Bui, 769 F.3d 831 (3d Cir. 2014), amended by 2015 U.S.App. LEXIS 13548 (3d Cir. Aug. 4, 2015)(amended Opinion, unaltered Judgment), that case is readily distinguishable from defendant's case and does not enable him to circumvent the collateral appeal waiver in this case.

       In the Bui case, defense counsel erroneously informed Mr. Bui that he was eligible for safety-valve relief from the otherwise-applicable ten-year statutory mandatory minimum sentence and, thus, Mr. Bui ultimately obtained no reduction in his overall sentencing exposure by pleading guilty pursuant to his written plea agreement with a broad waiver appellate rights. Id. at *11. Here, by contrast, defendant gained a significant reduction in his sentencing exposure by pleading guilty pursuant to the Guilty Plea Agreement. Specifically, by pleading guilty pursuant to his Guilty Plea Agreement and waiving, among other things and with very limited exception, his rights to appeal, Mr. Thompson obtained, among other things, the government's agreement not to charge both of his prior felony drug convictions. Without that agreement, Mr. Thompson faced a statutory mandatory term of life imprisonment pursuant to 21 U.S.C. § 841(b)(1)(A) if convicted.

       In short, whereas Mr. Bui gained nothing by waiving his appellate rights in his plea agreement -- and, thus, logic suggested it was not a knowing and voluntary waiver -- Mr. Thompson gained a great deal through his Guilty Plea Agreement, including its appellate waiver provision. Thus, logic confirms my finding at the April 6, 2012 change-of-plea hearing that his waiver was knowing and voluntary.

       For the reasons expressed above, defendant has not demonstrated that a miscarriage of justice would result from enforcement of his knowing and voluntary waiver of his right to collaterally attack his conviction and sentence. Accordingly, I grant the request by the government to enforce the collateral appeal waiver and dismiss defendant's Section 2255 Motion.

       Because the operative question here is whether or not defendant's agreement to the appellate waiver was knowing and voluntary at the time he entered his pleas pursuant to the Guilty Plea Agreement, and his sworn responses during the April 6, 2012 change-of-plea hearing (as opposed to the retrospective assertions advanced in the Section 2255 Motion and Defendant's Reply to Request for Dismissal) resolve that question, a hearing is not required.